{1184/000/00051708}

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                              Case No.: 14-23931-JKO

MILE MARKER, INC.,                                  Chapter 11

      Debtor.

_____/

## DEBTOR'S PLAN OF REORGANIZATION

September 8, 2014

Bradley S. Shraiberg, Esq.
Bernice C. Lee, Esq.
Eric Pendergraft, Esq.
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com
Email: ependergraft@sfl-pa.com

**ATTORNEYS FOR DEBTOR**

TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........................................................................... 1
ARTICLE II PROFESSIONALS ................................................................... 11
ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE

CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES .............. 11
    3.01.   Allowed Administrative Claims. .................................................. 11
    3.02.   Priority Tax Claims ................................................................... 12
    3.03.   United States Trustee's Fees. ..................................................... 12
ARTICLE IV CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ....................... 12
ARTICLE V TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ......... 13
    5.01.   Class 1.  Allowed DIP Loan Secured Claim ............................. 13
    5.02.   Class 2.  Allowed Presidential Secured Claim ......................... 13
    5.03.   Class 3. Allowed Real Property Secured Claim ....................... 14
    5.04.   Class 4.  Allowed Secured Taxing Authority Claims ................ 14
    5.05.   Class 5.  Allowed Unsecured Priority Claims ......................... 14
    5.06.   Class 6.  Allowed General Unsecured Claims. ........................ 15
    5.07.   Class 7.  Allowed Equity Interests ......................................... 15
ARTICLE VI  PROVISIONS REGARDING VOTING AND DISTRIBUTIONS
UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND  TREATMENT
OF DISPUTED, CONTINGENT AND UNLIQUIDATED  ADMINISTRATIVE
EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS ................................. 16
    6.01.   Solicitation of Votes ................................................................. 16
    6.02.   Voting of Claims and Interests ................................................. 16
    6.03.   Issuance of New Equity ............................................................ 16
    6.04.   Method of Distribution Under the Plan ..................................... 17
    6.05.   Distributions Withheld for Disputed Claims ............................ 18
    6.06.   Procedures for Allowance or Disallowance of Disputed Claims........ 19
    6.07.   Disbursing Agent ..................................................................... 20
    6.08.   Setoffs and Recoupment .......................................................... 21
    6.09.   Estimations of Claims .............................................................. 21
    6.10.   No Recourse.............................................................................. 21
    6.11.   Amendments to Claims............................................................. 22
    6.12.   Postpetition Interest on Claims ................................................ 22
    6.13.   Unclaimed Funds ..................................................................... 22
    6.14.   Cancellation of Securities ........................................................ 22
ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................... 22
    7.01.   Assumption or Rejection of Executory Contracts and Unexpired Leases .......... 22
    7.02.   Cure of Defaults ....................................................................... 24
    7.03.   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
              Unexpired Leases Rejected Pursuant to the Plan.................................. 24
    7.04.   Indemnification Obligations ..................................................... 24
    7.05.   Compensation and Benefit Programs........................................ 25
ARTICLE VIII MEANS FOR IMPLEMENTATION AND EFFECT OF
CONFIRMATION OF PLAN ............................................................................. 25
    8.01.   General ...................................................................................... 25
    8.02.   The DIP Lender Post Confirmation Credit Line…………………………………25

| 8.03 | Corporate Existence.......................................................................................................26 |
|------|-------------------------------------------------------------------------------------------------------------|
| 8.04 | The Reorganized Debtor ................................................................................. 26 |
| 8.05 | Effectiveness of Securities, Instruments and Agreements ............................. 26 |
| 8.06 | Corporate Action ............................................................................................ 26 |
| 8.07 | Approval of Agreements ................................................................................. 27 |
| 8.08 | Effectuating Documents; Further Transactions .............................................. 27 |
| 8.09 | No Change of Control ..................................................................................... 27 |
| 8.10 | Administration After the Effective Date ........................................................ 27 |
| 8.11 | Term of Bankruptcy Injunction or Stays ....................................................... 27 |
| 8.12 | Vesting of Assets in the Reorganized Debtor ................................................. 27 |
| 8.13 | Appointment of Plan Administrator................................................................27 |
| 8.14 | Causes of Action ............................................................................................ 28 |
| 8.15 | Discharge of Debtor........................................................................................28 |
| 8.16 | Injunction ....................................................................................................... 29 |
| 8.17 | Release by Holders of Claims and Interests....................................................29 |
| 8.18 | Injunction Against Interference with the Plan ............................................... 30 |
| 8.19 | Votes Solicited in Good Faith ........................................................................ 30 |
| ARTICLE IX | CONFIRMATION AND EFFECTIVENESS OF THE PLAN ........................ 30 |
| 9.01. | Conditions Precedent to Confirmation............................................................ 30 |
| 9.02. | Effect of Failure of Conditions ...................................................................... 31 |
| 9.03. | Waiver of Conditions ..................................................................................... 31 |
| ARTICLE X | RETENTION OF JURISDICTION ................................................................ 31 |
| ARTICLE XI | MISCELLANEOUS PROVISIONS .............................................................. 33 |
| 11.01 | Effectuating Documents and Further Transactions.......................................... 33 |
| 11.02 | Exemption from Transfer Taxes. .................................................................... 33 |
| 11.03 | Authorization to Request Prompt Tax Determinations.................................... 33 |
| 11.04 | Exculpation.....................................................................................................33 |
| 11.05 | Injunction Relating to Exculpation ................................................................ 34 |
| 11.06 | Post-Effective Date Fees and Expenses ......................................................... 34 |
| 11.07 | Payment of Statutory Fees ............................................................................. 34 |
| 11.08 | Amendment or Modification of Plan .............................................................. 34 |
| 11.09 | Severability .................................................................................................... 35 |
| 11.10 | Revocation or Withdrawal of the Plan ........................................................... 35 |
| 11.11 | Binding Effect Notices.................................................................................... 35 |
| 11.12 | Notices ........................................................................................................... 35 |
| 11.13 | Governing Law ............................................................................................... 36 |
| 11.14 | Withholding and Reporting Requirements ...................................................... 36 |
| 11.15 | Section 1125(e) of the Code ........................................................................... 36 |
| 11.16 | Filing of Additional Documents ..................................................................... 37 |
| 11.17 | No Admissions ................................................................................................ 37 |
| 11.18 | Waiver of Bankruptcy Rule 3020(e) and 7062 ............................................... 37 |
| 11.19 | Time ................................................................................................................ 37 |
| 11.20 | Substantial Consummation ............................................................................. 37 |
| 11.21 | Final Decree ................................................................................................... 37 |
| 11.22 | Inconsistency................................................................................................... 37 |
| 11.23 | No Interest or Attorneys' Fees ....................................................................... 37 |

11.24    Successors and Assigns.................................................................................. 38
11.25    Headings .......................................................................................................... 38
11.26    No Penalty for Prepayment ............................................................................ 38
11.27    Savings Clause ................................................................................................ 38
11.28    Remedy of Defects.......................................................................................... 38
11.29.   Post-Confirmation Date Service List ............................................................ 38
ARTICLE XII .................................................................................................................... 39
CONCLUSION.................................................................................................................... 39
CERTIFICATE OF SERVICE ........................................................................................... 40

## DEBTOR'S PLAN OF REORGANIZATION
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

Mile Marker, Inc. (the "<u>Debtor</u>") proposes the following plan of reorganization under section 1121(a) of the Code:

## ARTICLE I

## <u>DEFINITIONS</u>

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

*"Actions"* shall mean all actions that a Trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

*"Administrative Claim"* shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

*"Administrative Claim Bar Date"* shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

*"Administrative Claimant"* shall mean the holder of an Administrative Claim.

*"Affiliate"* shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Code, if such Person was a debtor in a case under the Code.

*"Allowed"* is used herein to describe any Claim or Equity Interest that is an Allowed Claim or an Allowed Equity Interest.

*"Allowed Amount"* shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.

In no event shall the Allowed Amount of any Priority Claim, Convenience Claim, or Unsecured Claim include interest accrued on such Claim after the Filing Date.

*"Allowed Claim"* shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

*"Article"* shall mean one of the numbered Articles of the Plan.

*"Assets"* shall mean any and all property of the Estate as defined under and included in Section 541(a) of the Bankruptcy Code, including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of actions, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

*"Assumed Contract"* shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the parties) that is assumed by the Debtor pursuant to the Plan.

*"Assumption List"* shall mean the list of executory contracts and unexpired leases to be assumed pursuant to Article VII of the Plan, which shall be filed with the Clerk of the Court as a part of the Plan Supplement.

*"Avoidance Actions"* shall mean the Actions pursuant to Chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542-553 of the Code.

*"Ballot"* shall mean the ballot upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

*"Ballot Deadline"* shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

*"Business Day"* shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Fort Lauderdale, Florida are authorized or required to close.

*"Case"* shall mean the Chapter 11 Case No. 14-23931-JKO, pending before the United States Bankruptcy Court for the Southern District of Florida.

*"Cash"* shall mean legal tender of the United States of America.

*"Claim"* shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

*"Claims Bar Date"* shall mean **October 22, 2014**, the last date for creditors, other than a governmental unit, and holders of Equity Interests to file Proofs of Claim or Equity Interest in the Case. *See* ECF No. 36.

*"Class"* shall mean a group of Claims or Equity Interests classified together pursuant to Article V of the Plan.

*"Class 1"* shall mean the Allowed DIP Loan Secured Claim, as described, classified and treated in Section 5.01 of this Plan.

*"Class 2"* shall mean the Allowed Presidential Secured Claim, as described and classified in Section 5.02 of this Plan.

*"Class 3"* shall mean the Allowed Real Property Mortgage Loan Secured Claim, as described and classified in Section 5.03 of the Plan.

*"Class 4"* shall mean the Allowed Secured Taxing Authority Claims, as described and classified in Section 5.04 of the Plan.

*"Class 5"* shall mean the Allowed Unsecured Priority Claims as classified in Section 5.05 of this Plan.

*"Class 6"* shall mean the Allowed General Unsecured Claims, as described, classified and treated in Section 5.06 of this Plan.

*"Class 7"* shall mean the Allowed Equity Interests, as described, classified and treated in Section 5.07 of this Plan.

*"Code"* shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

*"Collateral"* shall mean any property or interest in Property of the Estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

*"Confirmation"* shall mean the entry by the Court of the Confirmation Order.

*"Confirmation Date"* shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

**"Confirmation Hearing"** shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

**"Confirmation Order"** shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponents desire and shall otherwise be in a form and substance satisfactory to the Proponents.

**"Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

**"Creditor"** shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

**"Debtor" or "Debtor-in-Possession"** shall mean Mile Marker, Inc.  Any reference to the "Debtor" shall also include the Debtor in its capacity as debtor-in-possession in this Case, and vice-versa.

**"DIP Lender"** shall mean HRH Boca, LLC, or its assignee, which is the lender party to the DIP Loan Agreement (defined below).

**"DIP Lender Contribution"** shall mean the DIP Lender's forgiveness of the lesser of $50,000.00 or 10% of the outstanding balance of the Allowed DIP Loan Secured Claim.

**"DIP Lender Post-Confirmation Credit Line"** shall mean the line of credit in an amount up to $1,000,000.00 from the DIP Lender to be established by the Effective Date, inclusive of the amount due under the DIP Loan Secured Claim, bearing interest at 12% per annum, maturing in three years after the Effective Date, evidenced by loan documents to be executed before the Effective Date, and secured by a second position lien on all of the Reorganized Debtor's personal property, except for the Avoidance Actions, junior only to the Presidential Secured Claim. Following the satisfaction of the Presidential Secured Claim pursuant to the terms of the Plan, the DIP Lender Post-Confirmation Credit Line shall have a first lien position on all of the Reorganized Debtor's personal property.  The form loan documents required to establish the DIP Lender Post-Confirmation Credit Line shall be filed with the Court prior to the date of the Confirmation Hearing.

**"DIP Loan"** shall mean the certain debtor-in-possession senior, secured, superpriority loan entered into pursuant to the DIP Loan Agreement.

**"DIP Loan Agreement"** shall mean that certain debtor-in-possession loan agreement, signed on or about June 20, 2014, *see* ECF No. 25-1, by and among the Debtor, as borrower, and the DIP Lender, as the same may have been subsequently modified, amended, or supplemented, together with all instruments and agreements related thereto.

**"DIP Loan Secured Claim"** shall mean the total amount owed by the Debtor to the DIP Lender under the DIP Loan, which constitutes loan(s) and advance(s) provided by the DIP Lender to the Debtor post-petition in a principal amount of up to $400,000.00. As of September 5, 2014, the total amount owed by the Debtor to the DIP Lender under the DIP Loan is $400,000.00, plus interest, fees, costs, and expenses owed pursuant to the DIP Loan Agreement. The Debtor will file a notice of amount of Allowed DIP Loan Secured Claim prior to the date of the Confirmation Hearing.

**"DIP Final Order"** shall mean the *Final Order Authorizing Debtor to Obtain Post-Petition Financing and Granting Superpriority Administrative Expense Claims and First Priority Lien Position Pursuant to 11 U.S.C. § 364* [ECF No. 80] entered by the Court on July 18, 2014.

**"Disputed Amount"** shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

**"Disputed Claim"** shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated, including, though not limited to, Disputed Priority Claims, and Disputed General Unsecured Claims. Distributions withheld for Disputed Claims are described in Article 6 of the Plan. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

**"Disputed Claims Reserve"** shall have the meaning set forth in Section 6.05(a) of the Plan.

**"Distribution"** shall mean funds to be paid to holders of Claims pursuant to Article III, Article IV, Article V and Article VI of the Plan.

**"Distribution Date"** shall mean the dates upon which Distributions may be made pursuant to Article VI of the Plan.

**"Distribution Record Date"** shall mean the date, as set by an order of the Court, on which the Debtor, the Reorganized Debtor or Plan Administrator, as the case may be, will cease processing transfers of Claims and Equity Interests, and upon which Allowed Claims and Allowed Equity Interests are determined for purposes of voting on, or receiving Distributions under, the Plan.

**"Docket"** shall mean the docket maintained in this Case by the Clerk of the Court.

**"Effective Date"** shall be described in the Confirmation Order and shall be the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 9.01 of the Plan occurs.

*"Entity"* shall have the meaning set forth in section 101(15) of the bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the United States trustee.

*"Equity Interest"* shall mean any ownership or equity interest in the Debtor, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtor.

*"Estate"* shall mean the estate that was created by the commencement of the Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or the Estate shall have had as of the Petition Date, or which the Debtor or the Estate acquired after the commencement of the Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

*"Executory Contract"* shall mean a contract or unexpired lease to which any of the Debtor is a party and that is executory within the meaning of section 365 of the Code.

*"Face Amount"* shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

*"Fee Request"* shall mean an application or request for payment by the Estate of fees, compensation for services rendered, or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

*"Filing Date"* shall mean June 18, 2014, the date on which the Debtor commenced this Case by filing a voluntary petition under Chapter 11 of the Code. *See* ECF No. 1.

*"Final Order"* shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

"*General Unsecured Claim*" shall have the same meaning as Unsecured Claim.

"*Governmental Claims Bar Date*" shall mean **December 15, 2014**, the last date for a governmental unit to file Proofs of Claim in the Case. *See* ECF No. 36.

"*Impaired*" shall mean an Allowed Claim or Allowed Equity Interest that is Impaired within the meaning of section 1124 of the Code.

"*Insider(s)*" shall mean those Persons defined in section 101(31)(B) of the Code.

"*Late Filed Claim*" shall mean either: (a) a Claim filed after the Claims Bar Date by a creditor or holder of an Equity Interest that is not a governmental unit; or (b) a Claim filed after the Governmental Claims Bar Date by a governmental unit creditor or holder of an Equity Interest.

"*Lien*" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

"*Net Proceeds*" shall mean the amount remaining from recoveries of the Actions, less Plan Administrator's fees, attorneys' fees, costs and other related expenses.

"*New Equity*" shall mean the membership or ownership interests in the Reorganized Debtor, authorized to be issued pursuant to the Plan.

"*Person*" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"*Petition Date*" shall mean the Filing Date.

"*Plan Administrator*" shall mean Michael Phelan and Michael Moecker and Associates, Inc.

"*Plan*" shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

"*Plan Documents*" shall mean the documents to be filed as a part of the Plan Supplement.

"*Plan Supplement*" shall mean the Assumption List, and list of Actions which shall be identified and otherwise filed with the Clerk of the Court on or before twenty (20) days prior to the commencement of the Confirmation Hearing.

"*Post-Petition*" means a date on or after the Petition Date.

**"Post-Petition Interest"** shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

**"Presidential"** shall mean Presidential Financial Corporation.

**"Presidential Loan Agreement"** shall mean that certain loan agreement dated April 16, 2008, *see* ECF No. 44-1, by and among the Debtor, as borrower, and Presidential, as the same may have been subsequently modified, amended, or supplemented, together with all instruments and agreements related thereto.

**"Presidential Secured Claim"** shall mean the total amount owed by the Debtor to the Presidential under the Presidential Property Loan Agreement, with interest to be calculated at the non-default rate, or as otherwise determined by the Court or agreed to by the Debtor and Presidential.

**"Pre-Petition"** shall mean prior to the Filing Date.

**"Priority Claim"** shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

**"Priority Tax Claim"** shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

**"Pro Rata"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed General Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Claim or Disputed Equity Interest upon final resolution of the dispute.

**"Professional"** shall mean any professional employed in these Cases pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

**"Property of the Estate"** shall mean the property defined in section 541 of the Code.

**"Proponent"** shall mean the Debtor.

**"Real Property"** shall mean the real property located at 2121 Blount Road, Pompano Beach, Florida 33069 for which the legal description is as follows:

A portion of Lots 13 and 14, "TURNPIKE INDUSTRIAL PARK", according to the Plat thereof as recorded in Plat Book 111, at Page 20 of the Public Records of Broward County, Florida.

*"Real Property Lender"* shall mean the holder of, and entity entitled to enforce, the Real Property Loan Agreement.

*"Real Property Loan Agreement"* shall mean that certain promissory note executed by the Debtor on or about December 28, 2006 in favor of Lehman Brothers Bank, FSB related to that certain mortgage recorded on January 4, 2007 in Book 43376, Page 1935 of the Official Records of Broward County, Florida.

*"Real Property Secured Claim"* shall mean the total amount owed, if any, by the Debtor to the Real Property Lender under the Real Property Loan Agreement, which amount shall not exceed the value of the Real Property, less the amount of the Allowed Secured Taxing Authority Claim(s), as determined by the Real Property Valuation Order. To the extent the amount owed under the Real Property Loan Agreement exceeds the amount determined by the Real Property Valuation Order, such excess amount shall be treated as a General Unsecured Claim. The Debtor anticipates that the value of the Real Property, pursuant to the Real Property Valuation Order, will be $1,370,000.00, and amount of the Allowed Real Property Secured Claim will be $1,370,000.00, less the amount of the Allowed Secured Taxing Authority Claim(s).

*"Real Property Valuation Order"* shall mean the *Order on Debtor's Motion to Value Real Property* that the Debtor anticipates will be entered by the Court before the date of the Confirmation Hearing.

*"Released Parties"* shall mean the Debtor, the Reorganized Debtor, the Plan Administrator, and the DIP Lender, and each of their respective current and former directors, officers, employees, representatives, members, affiliates, agents, counsel, financial advisors, and professionals.

*"Rejected Contract"* shall mean an Executory Contract that is rejected at any time during this Case or pursuant to Article VII of the Plan.

*"Rejection Claim"* shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

*"Reorganized Debtor"* shall mean the Debtor, as a reorganized entity on or after the Effective Date.

*"Retainer"* shall have the meaning provided for in section 8.13 of the Plan.

*"Rules"* shall mean the Federal Rules of Bankruptcy Procedure.

"**Schedules**" shall mean the Schedules of assets and liabilities originally filed by the Debtor with the Court as the same may be amended from time to time.

"**Section**" shall mean a numbered subsection of any Article of the Plan.

"**Secured Claim**" shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"**Secured Creditor**" shall mean the holder of a Secured Claim.

"**Secured Taxing Authority Claims**" shall mean ad valorem taxes assessed against the Real Property in the ordinary course of business.

"**Substantial Consummation**" shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

"**Unimpaired**" shall mean an Allowed Claim or Allowed Equity Interest that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

"**Unsecured Claim**" shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

"**Unsecured Creditor**" shall mean the holder of an Unsecured Claim.

"**Unsecured Creditor Fund**" shall mean the sum of $95,000.00, less the payment for an estimated $6,825.00 for U. S. Trustee's fees and less amounts required by the Plan Administrator to pay expenses related to the Disputed Claims Reserve as it is required for any disputed General Unsecured Claims, and the Net Proceeds from Avoidance Actions that will be disbursed to the holders of Allowed General Unsecured Claims, on a pro rata basis, under the terms of the Plan. The $95,000.00 will be provided by funds obtained from the DIP Lender Post Confirmation Credit Line.

"**U.S. Trustee's Fees**" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

"**Rules of Construction and Interpretation**"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b)   Words of masculine, feminine, or neutral gender shall mean and include the

correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

## PROFESSIONALS

The Court authorized the Debtor to retain certain professionals in connection with the Chapter 11 Case.  Specifically, Debtor retained, and the Bankruptcy Court approved the retention of, the following professionals: (a) Bradley S. Shraiberg and the law firm of Shraiberg, Ferrara & Landau, P.A. ("SFL") as general bankruptcy counsel; (b) Jonathan L. Shepard and the law firm of Siegel, Lipman & Shepard, LLP ("SLS") as special counsel for corporate and securities compliance; (c) James P. Wiberg and Triode Systems, Inc. ("TSI") as chief restructuring officer; and (d) Sandirose Magder and Analytic Consulting Group, LLC ("ACG") as financial consultant and advisor.

In addition, the Debtor has filed an application to employ Tracy Weintraub and Tracy Weintraub, P.A. as an accountant to prepare the Debtor's tax returns [ECF No. 97] and application to employ Barry E. Mukamal and KapilaMukamal, LLP as an accountant to provide the Debtor with bankruptcy tax services [ECF No. 101].  The Debtor also intends to file an application to employ Joe R. Price and Joe R. Price & Associates Inc. as an appraiser.  The Debtor anticipates that the Court will approve these applications.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS:
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS
## AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

### 3.01.  Allowed Administrative Claims.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the later of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative

Claim becomes a Final Order. Allowed Administrative Claims will be paid with funds from the Debtor's operations of the Debtor, and in the event there are any shortfalls, with funds from the DIP Lender Post Confirmation Credit Line. The Debtor estimates that total Allowed Administrative Claims will total $100,000.00.

### 3.02. <u>Priority Tax Claims</u>

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtor's business on the date of assessment of such Claim.

### 3.03. <u>United States Trustee's Fees.</u>

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. Thereafter, the Plan Administrator, from the Unsecured Creditor Fund, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Plan Administrator shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## ARTICLE IV

## <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtor shall be as follows:

| <u>Class</u> | <u>Description</u> | <u>Status</u> | <u>Voting Status</u> |
|---|---|---|---|
| Class 1 | Allowed DIP Loan Secured Claim | Impaired | Yes. |
| Class 2 | Allowed Presidential Secured Claim | Impaired | Yes. |
| Class 3 | Allowed Real Property Mortgage Loan Secured Claim | Impaired | Yes. |
| Class 4 | Allowed Secured Taxing Authority Claims | Unimpaired | No. |
| Class 5 | Allowed Unsecured Priority Claims | Unimpaired | No. Deemed to accept. |
| Class 6 | Allowed General Unsecured Claims | Impaired | Yes. |
| Class 7 | Allowed Equity Interests | Impaired. | No. Deemed to reject. |

## ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 5.01.    Class 1.  Allowed DIP Loan Secured Claim

(a)    Description.  Class 1 consists of the Allowed DIP Loan Secured Claim, which consists of the DIP Lender's post-petition secured claim authorized pursuant to the Court's *Interim Order (a) Authorizing Debtor to Obtain Post-Petition Financing and Granting Superpriority Administrative Expense Claims and First Priority Lien Position Pursuant to 11 U.S.C. § 364 and (b) Scheduling Final Hearing* [ECF No. 22], and the DIP Final Order. The Debtor estimates that total Allowed DIP Loan Secured Claim will total $450,000.00, which amount is inclusive of interest, fees, costs, and expenses owed pursuant to the DIP Loan Agreement.  The Debtor will file a notice of amount of Allowed DIP Loan Secured Claim prior to the date of the Confirmation Hearing.

(b)    Treatment. On the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the holder of the Allowed DIP Loan Secured Claim shall be satisfied in full, less the amount of the DIP Lender Contribution, from the DIP Lender Post Confirmation Credit Line.

(c)    Impairment.  The Class 1 Claim is Impaired.

### 5.02.    Class 2.  Allowed Presidential Secured Claim

(a)    Description. Class 2 consists of the Allowed Presidential Secured Claim, with interest to be calculated at the non-default rate, or as otherwise determined by the Court or agreed to by the Debtor and Presidential.  Presidential has filed a proof of claim for a Secured Claim in the amount of $291,842.26 [POC 6].

(b)    Treatment.  Beginning on the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the holder of the Allowed Presidential Secured Claim shall receive from the Reorganized Debtor, monthly payments of principal and interest for a period of six (6) months that provides for payments totaling the amount of the Allowed Presidential Secured Claim, with an interest rate of two percent (2%) over prime, or as otherwise agreed to by Presidential or as determined by the Court.  The Reorganized Debtor is permitted to prepay the Allowed Presidential Secured Claim without penalty.  The loan documents relating to the Allowed Presidential Secured Claim shall be deemed modified to eliminate any provisions regarding: (i) prepayment premiums or penalties; (ii) yield maintenance; and (iii) any financial defaults, with interest calculated at the non-default rate.  The Reorganized Debtor will provide the payments for the Allowed Presidential Secured Claim with funds from operations.

(c)    Impairment.  The Class 2 Claim is Impaired.

**5.03.   Class 3. Allowed Real Property Secured Claim**

(a)   Description. Class 3 consists of the Allowed Real Property Secured Claim, which amount shall be determined by the value of the Real Property, less the amount of the Allowed Secured Taxing Authority Claim(s), as set forth in the Real Property Valuation Order.  Any additional amounts owed the Real Property Loan Agreement shall be treated as a General Unsecured Claim.  The Debtor anticipates that the value of the Real Property, pursuant to the Real Property Valuation Order, will be $1,370,000.00, and estimates that the Allowed Secured Taxing Authority Claim(s) will total $39,558.40, and therefore the Allowed Real Property Secured Claim is expected to be $1,330,441.60.

(b)   Treatment.  Beginning on the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the holder of the Allowed Real Property Secured Claim shall receive from the Reorganized Debtor, monthly payments of principal and interest for a period of fifteen (15) years that provides for payments totaling the amount of the Allowed Real Property Secured Claim, with an interest rate of 5% per annum, or as otherwise agreed to by the holder of the Allowed Real Property Secured Claim or as determined by the Court.  The Reorganized Debtor is permitted to prepay the Allowed Real Property Secured Claim without penalty.  The loan documents relating to the Allowed Real Property Secured Claim, including the Real Property Loan Agreement, shall be deemed to be modified to (A) eliminate any provisions regarding: (i) prepayment premiums or penalties, (ii) yield maintenance and (iii) any financial defaults; and (B) provide that such loan documents shall be assignable by the Reorganized Debtor to a purchaser of the Real Property, if so elected by the Reorganized Debtor and such purchaser of the Real Property.  The Reorganized Debtor will provide the payments for the Allowed Real Property Secured Claim with funds from operations.

(c)   Impairment.  The Class 3 Claim is Impaired

**5.04.   Class 4.  Allowed Secured Taxing Authority Claims**

(a)   Description. Class 4 consists of the Allowed Secured Taxing Authority Claims. Broward County Records, Taxes & Treasury has filed a proof of claim for a Secured Claim in the amount of $1,250.24 for 2014 tangible property taxes, and a proof of claim for a Secured Claim in the amount of $38,308.16 for 2013 real estate taxes [POCs 3, 4].

(b)   Treatment.  On the Effective Date, each holder of an Allowed Secured Taxing Authority Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, payment the later of (i) in the ordinary course when due in 2015, (ii) on the Effective Date, or (iii) the date on which an order approving payment of such Allowed Secured Taxing Authority Claim becomes a Final Order, unless otherwise ordered by the Court. The Debtor will provide the payments for the Allowed Secured Taxing Authority Claim with funds from operations.  All holders of such Claims shall be deemed to have accepted the Plan.

(c)   Impairment.  The Class 4 Claims are Unimpaired.

**5.05.   Class 5.  Allowed Unsecured Priority Claims**

(a)    <u>Description</u>. Class 5 consists of the Allowed Unsecured Priority Claims, if any, given priority under section 507(a) of the Bankruptcy Code.  The Debtor estimates the Florida Department of Revenue has an Unsecured Priority Claim in the amount of $1,002.34.  Also, the Internal Revenue Service filed a proof of claim for unassessed liability and interest for 2013 and 2014 in the amount of $49,745.79 [POC 5].  The Debtor believes the Allowed Amount due to the Internal Revenue Service is actually $0.00.

(b)    <u>Treatment</u>.  On the Effective Date, each holder, if any, of an Allowed Unsecured Priority Claim shall be paid from the Reorganized Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, 100% of such Claim in Cash, unless otherwise ordered by the Court, upon the later of (1) the Effective Date or, (2) the date on which an order approving payment of such Allowed Unsecured Priority Claim becomes a Final Order.  All holders of such Claims shall be deemed to have accepted the Plan.  The Reorganized Debtor will provide the payments for the Allowed Secured Taxing Authority Claim with funds from operations.

(c)    <u>Impairment</u>.  The Class 5 Claims are unimpaired.

### 5.06.    <u>Class 6</u>.  <u>Allowed General Unsecured Claims.</u>

(a)    <u>Description</u>.  Class 6 consists of the Allowed General Unsecured Claims.  The Debtor estimates that Allowed General Unsecured Claims will total $839,169.32.

(b)    <u>Treatment</u>.  Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, a Pro Rata distribution of the Unsecured Creditor Fund on the Effective Date which includes the $95,000.00 less the payment for an estimated $6,825.00 for U. S. Trustee's fees and less amounts required by the Plan Administrator to pay expenses related to the Disputed Claims Reserve as it is required for any disputed General Unsecured Claims, and a Pro Rata distribution of any Net Proceeds of Avoidance Actions once such Net Proceeds become available.  The Plan Administrator shall disburse the Unsecured Creditor Fund and any Net Proceeds of Avoidance Actions pursuant to the terms of the Plan.

(c)    <u>Impairment</u>.  The Class 6 Claims are Impaired.

### 5.07.    <u>Class 7</u>.  <u>Allowed Equity Interests</u>

(a)    <u>Description</u>.  Class 7 consists of Equity Interests.  Equity Interests consist of any share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b)    <u>Treatment</u>.  On the Effective Date, all Allowed Equity Interests in the Debtor shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution to the holders of Allowed Equity Interests.

(c)      Impairment.  The Class 7 Equity Interests are Impaired

## ARTICLE VI

## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS

### 6.01.   Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Class 1, Class 2, Class 3, and Class 6 are impaired and entitled to vote on the Plan.  Claims in Class 4 and Class 5 are unimpaired.  The holders of Allowed Claims in Class 4 and Class 5 are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Class therefore is not required under section 1126(f) of the Bankruptcy Code.  Holders of Equity Interests in Class 7 will receive no distribution under the Plan and thus, the holders of Equity Interests in Class 7 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan under section 1126(g) of the Bankruptcy Code.  Also, Class 7 may include Insider Claims and Interests whose votes are not calculated when determining whether the Plan has been accepted or rejected.

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any Insider.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

### 6.02.   Voting of Claims and Interests

Each holder of an Allowed Claim that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

### 6.03.   Issuance of New Equity

On the Effective Date or as soon as reasonably practicable after, in exchange for the DIP Lender Contribution and the DIP Lender Post Confirmation Credit Line, the Reorganized Debtor shall authorize and issue 100% of the New Equity membership interests, which shall be free and clear of all liens, claims or encumbrances of any kind or nature, to be issued to the DIP Lender. The DIP Lender shall promptly thereafter transfer and assign 15% of the New Equity membership interests to Leslie Aho, the Debtor's President.  All of the New Equity membership

interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.  Each distribution and issuance referred to herein shall be governed by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance.

### 6.04.    Method of Distribution Under the Plan

(a)    Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Debtor, Reorganized Debtor or Plan Administrator to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Distribution Record Date unless the Debtor, the Reorganized Debtor or the Plan Administrator have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made by the Debtor, the Reorganized Debtor or the Plan Administrator pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Debtor, the Reorganized Debtor or the Plan Administrator to any holder of a Claim unless a request therefore is made in writing to the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, or unless the Distribution is a final Distribution.

(f)    When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.04(f) of the Plan.

(g)    In the event that any Distribution to any holder is returnable as undeliverable, the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(h)     At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor, the Reorganized Debtor and the Plan Administrator, as applicable, shall have no obligation to recognize any transfer of any Claims occurring after the Distribution Record Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Distribution Record Date and prior to the Effective Date.  The Debtor, the Reorganized Debtor and the Plan Administrator, as applicable shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date.

### 6.05.   Distributions Withheld for Disputed Claims

**(a)     Establishment and Maintenance of Reserve**

On the Distribution Date and each subsequent distribution date, the Debtor, the Reorganized Debtor and the Plan Administrator, as applicable, shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims, including Disputed Unsecured Claims and Disputed Secured Claims, would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor or the Court in accordance with Section 6.09 of the Plan (the "Disputed Claims Reserve").

**(b)     Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Debtor, the Reorganized Debtor and the Plan Administrator, as applicable for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor.

**(c)     Distributions Upon Allowance of Disputed Claims**

The holder of a Disputed Claim, including a Disputed Unsecured Priority Claim and General Unsecured Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Debtor, the Reorganized Debtor and the Plan Administrator, as applicable upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

**(d)     No Surplus Distributions to Holders of Allowed Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in

the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

**(e)     Expenses of Disputed Claims Reserve**

Expenses incurred on or after the Effective Date with respect to the Disputed Claims Reserve, to the extent such Disputed Claims relate to Class 6 Unsecured Claims, shall by paid by the Plan Administrator from the Unsecured Creditor Fund.  Otherwise, such expenses shall be paid by the Debtor.

### 6.06.    Procedures for Allowance or Disallowance of Disputed Claims

**(a)     Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

Any and all objections to any Claim must be filed by the date established by the Court (the "Objection Deadline"), or with respect to rejection claims, within five (5) days of their filing (the "Objection to Rejection Claims Deadline").  In the event that the Debtor settles any claim objection, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim.  In the event that the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor will set the contested matter for hearing before the Court and will provide all interested parties with notice of the date set.  To the extent that an objection to a Class 6 Unsecured Claim is pending as of the Effective Date, the Plan Administrator may be substituted in for the Debtor with respect to such objection.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of a Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims subsequent to the Effective Date.  All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of its objections without approval of the Court.  Unless otherwise ordered by the Court, the Debtor or the Reorganized Debtor shall file all objections to Administrative Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court.  The Debtor and the Reorganized Debtor reserve the right to object to Administrative Claims as such claims arise in the ordinary course of business.  The Debtor, Reorganized Debtor, or the Plan

Administrator, whichever applicable, shall bear all costs and expenses solely with respect to its own investigation and/or prosecution of Disputed Claims, if any.

Subject to applicable law, from and after the Effective Date, the Debtor, the Reorganized Debtor or the Plan Administrator will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any claim must be filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtor, at any time on or before the Claim Objection Deadline. The failure by Debtor to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

**(b)    No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is disputed, the full amount of such Claim or Interest shall be treated as a Disputed Claim or Disputed Interest for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

**(c)    Disallowed Claims**

All Claims held by Persons against whom the Debtor or the Plan Administrator has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant Section 6.06(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

**6.07.  <u>Disbursing Agent</u>**

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims, and will make all Distributions required to be distributed under the Plan; <u>provided that</u>, the Plan Administrator will act as Disbursing Agent under the Plan with respect to payments for the holders of the Allowed General Unsecured Claims.  Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan. Each Disbursing Agent will serve without bond, and each Disbursing Agent, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor; <u>provided, however, that</u>, the Plan Administrator's reasonable compensation for distribution services rendered pursuant to the Plan

and reimbursement of reasonable out-of-pocket expenses in connection with such services shall be subject to fee applications and the Court's approval, and any awarded amounts shall be paid for with the Retainer, and for any awarded amounts that exceed the Retainer, solely from recoveries from any Avoidance Actions (if any).

### 6.08.    Setoffs and Recoupment

The Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or  Equity Interest, any Claims of any nature whatsoever that the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, of any setoff or recoupment right it may have against the holder of such Claim or Equity Interest.

### 6.09.    Estimations of Claims

For purposes of calculating and making Distributions under the Plan, the Debtor, or the Reorganized Debtor, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtor, or the Reorganized Debtor, and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor, or the Reorganized Debtor, previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor, or the Reorganized Debtor, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 6.10.    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, the DIP Lender, the Reorganized Debtor, or any of their respective professionals, consultants,

officers, directors or Affiliates or their respective successors or assigns, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code.  THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 6.11.    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law.   After the Confirmation Date, a Claim may not be amended without the authorization of the Court.  Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor, the Plan Administrator or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 6.12.    Postpetition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

### 6.13.    Unclaimed Funds

Any funds unclaimed for the period described in paragraph 6.04(g) above shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Court pursuant to Local Rule 3011-1(B).

### 6.14.    Cancellation of Securities

On the Effective Date, all Equity Interests in the Debtor shall be deemed, and shall be, cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

### ARTICLE VII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases

### (a)    Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the

rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Confirmation Hearing; *provided, however*, that the Debtor or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtor or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtor or the Reorganized Debtor that such document is an executory contract or an unexpired lease, or that the Debtor or the Reorganized Debtor have any liability thereunder.

     **(b)**    **Schedules of Assumed Executory Contracts and Unexpired Leases; Inclusiveness**

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include (1) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List and (2) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

     **(c)**    **Insurance Policies**

Each of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan.  Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan.  Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

(d)     **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (1) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VII of the Plan and (2) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

### 7.02.   Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement.  To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtor by no later than five days prior to the Confirmation Hearing.  Except as may otherwise be agreed to by the parties or provided herein, within ninety days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code.  Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.  If there are any objections filed, the Court shall hold a hearing.  In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

### 7.03.   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtor or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty days after the later of (1) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (2) notice of entry of the Confirmation Order and (3) notice of an amendment to the Assumption List.  Any Claim not filed within such time will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor and their respective property.  Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 6 General Unsecured Claims under the Plan.

### 7.04.   Indemnification Obligations

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law

or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Commencement Date.

### 7.05.   Compensation and Benefit Programs

Except as provided in the Plan and Assumption List, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

### 8.01.   General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor, the Reorganized Debtor, or the Plan Administrator, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 8.02   The DIP Lender Post Confirmation Credit Line

On the Effective Date, the DIP Lender shall provide to the Reorganized Debtor the DIP Lender Post Confirmation Credit Line, following the execution of loan documents by the Reorganized Debtor and the DIP Lender in connection therewith.  Such loan documents will be executed before the Effective Date, and form of such loan documents shall be filed with the Court prior to the date of the Confirmation Hearing.

The DIP Lender Post Confirmation Credit Line shall bear interest at 12% per anum, shall mature three years after the Effective Date, and shall be secured by a second position lien on all of the Reorganized Debtor's personal property, except for the Avoidance Action, with such second position lien being junior only to the Presidential Secured Claim.  Following the satisfaction of the Presidential Secured Lien pursuant to the terms of the Plan, the DIP Lender Post-Confirmation Credit Line shall have a first lien position on all of the Reorganized Debtor's personal property, except for the Avoidance Actions.  On the Effective Date, the DIP Lender

Post Confirmation Credit Line shall be used to pay: (a) the Allowed DIP Loan Secured Claim in full, less the DIP Lender Contribution; (b) the Unsecured Creditor Payment; and (c) any shortfalls for administrative expenses due at Confirmation.

### 8.03    Corporate Existence

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date, with all powers of a limited liability company, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended or superseded by the Plan or otherwise, and to the extent such documents are amended or superseded, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.  Following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Code, the Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

### 8.04    The Reorganized Debtor

Except as otherwise expressly provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estate, including the Assets, free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to those of holders of Claims and holders of Equity Interests. The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

### 8.05    Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 8.06    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtor or the Reorganized Debtor or its successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the new membership interests and documents relating thereto, the adoption of the Reorganized Debtor's articles of organization, the adoption of the Reorganized Debtor's operating agreement, and the election or appointment, as the case may be, of managers or officers of the Reorganized Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to applicable general business organization law, without any requirement of further action by the stockholders, directors or members of the Debtor or Reorganized Debtor.  On the Effective Date or as soon

thereafter as is practicable, the Reorganized Debtor shall, if required, file all necessary documents to organize as or convert to a limited liability company with the secretary of state of the state in which the Reorganized Debtor is to be incorporated, in accordance with the applicable general business organization law of such state.

### 8.07    Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

### 8.08    Effectuating Documents; Further Transactions

On and after the Effective Date, the members of the board of directors of the Debtor are authorized to and may direct any officer to, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 8.09    No Change of Control

Except as provided in the Plan and Confirmation Order, any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 8.10    Administration After the Effective Date

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

### 8.11    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 8.12    Vesting of Assets in the Reorganized Debtor

Pursuant to section 1141 of the Code, the property of the Estate of the Debtor, including, without limitation, the Assets, including Actions and the Unsecured Creditor Fund, shall be transferred to and vest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and Interests of holders of Claims and Equity Interests, including any party asserting any claims against or interests in the Debtor, except as otherwise expressly provided in the Plan or the Confirmation Order.

### 8.13    Appointment of Plan Administrator

The Plan Administrator shall be deemed appointed as of the Effective Date. The Plan Administrator shall be a "representative of the estate" as contemplated by 11 U.S.C. § 1123(b)(3)(B) for all purposes related to the administration of the Unsecured Creditor Fund, including with respect to the Avoidance Actions, and will hold and monetize the Unsecured Creditor Fund in accordance with the provisions of this Plan.

On the Effective Date, the Reorganized Debtor shall provide the Plan Administrator with a retainer in the amount of $5,000.00 with funds from the DIP Lender Post Confirmation Credit Line (the "Retainer"). The Plan Administrator shall file fee applications with the Court, and upon approval of such fee applications, the Plan Administrator may apply the retainer funds against the amount awarded by the Court, and for any amount awarded that exceeds $5,000.00, the Plan Administrator may apply the recoveries from any Avoidance Actions (if any) against such additional amount awarded. Any unused portion of the Retainer following the conclusion of the Plan Administrator's services shall be returned to the Reorganized Debtor.

The Plan Administrator may retain professionals to prosecute the Avoidance Actions on a contingency fee basis, subject to Court approval. Except with respect to the Retainer, all fees and costs incurred in connection with administering the Unsecured Creditor Fund shall be paid from the Unsecured Creditor Fund.

### 8.14    Causes of Action

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Reorganized Debtor and/or the Disbursing Agent, as the case may be, who shall have the authority, but not the obligation, to commence and prosecute such Actions for the benefit of the Estate. Further, section 547 of the Code enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of the petition date, which enables the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value. The Reorganized Debtor or the Plan Administrator, as the case may be, will analyze payments made by the Debtor to creditors within ninety (90) days (or in the case of Insiders, one year) before the Petition Date (as set forth in item 3(a) in the Debtor's Statement of Financial Affairs) to determine which such payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions.    After the Effective Date, the Reorganized Debtor and/or the Plan Administrator, as the case may be, shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court.

### 8.15    Discharge of Debtor

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in

complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan.  Except as otherwise provided herein, (a) on the Effective Date, all such Claims against the Debtor and Equity Interests in the Debtor shall be satisfied, discharged and released in full, and (b) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.

### 8.16    Injunction

**Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtor or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor, with respect to any such Claim or Equity Interest, (b) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor or the Reorganized Debtor on account of any such Claim or Equity Interest, (c) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or the Reorganized Debtor, or against the property or interests in property of the Debtor or the Reorganized Debtor, on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation from the Debtor or the Reorganized Debtor, or against the property or interests in property of the Debtor or the Reorganized Debtor, on account of any such Claim or Equity Interest.  The injunctions described herein shall extend to the DIP Lender, the successors of the Debtor, including, without limitation, the Reorganized Debtor, and their respective properties and interests in property.**

### 8.17    Release by Holders of Claims and Interests

**This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against, and Equity Interests in, the Debtor may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019.  In consideration of the obligations of the Debtor and the Reorganized Debtor under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against, and Equity Interest in, the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's respective obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission,**

transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 8.16, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.

### 8.18    Injunction Against Interference with the Plan

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims, Equity Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

### 8.19    Votes Solicited in Good Faith

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE IX

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 9.01.    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.03 of the Plan:

(i)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and the DIP Lender, and include, among other things, a finding of fact that the Debtor, the Reorganized Debtor, the DIP Lender, and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(ii)    The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iii)    All exhibits to the Plan, including those to be contained in the Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor and the DIP Lender and approved by the Court;

(iv)    The statutory fees owing to the United States Trustee shall have been paid in full; and

(v)    All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### 9.02.    Effect of Failure of Conditions

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

### 9.03.    Waiver of Conditions

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.01 of the Plan. The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

### ARTICLE X

### RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor, the Reorganized Debtor, the Plan Administrator, or any other party in interest with

standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)　　to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)　　to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)　　to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)　　to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)　　to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)　　to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)　　to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)　　to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)　　to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)　　to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)　　to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)　　to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)　　to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce

injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)    to hear any other matter not inconsistent with the Code; and

(r)    to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### 11.01    Effectuating Documents and Further Transactions.

The Debtor, the Reorganized Debtor, or the Plan Administrator, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 11.02    Exemption from Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new membership interests, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.03    Authorization to Request Prompt Tax Determinations.

The Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 11.04    Exculpation.

Subject to the occurrence of the Effective Date, neither the Debtor, the Reorganized Debtor, the DIP Lender, nor any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; *provided*, *however,* that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such

Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided further* that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.

### 11.05    Injunction Relating to Exculpation

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtor, the Reorganized Debtor and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

### 11.06    Post-Effective Date Fees and Expenses

Except as otherwise provided in the Plan and Confirmation Order, from and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 11.07    Payment of Statutory Fees

The Plan Administrator, from the Unsecured Creditor Fund, shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) on and after the Effective Date. After confirmation, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 11.08    Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor, and without the approval of the Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 11.09    Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.10    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

### 11.11    Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 11.12    Notices

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Notices shall be sent or delivered to the following:

**To the Reorganized Debtor:**

Mile Marker, Inc.
c/o Leslie Aho

2121 Blount Road
Pompano Beach, Florida 33069
Phone: (954) 782-0604
Fax: (954) 782-0770

**With a copy to:**

Shraiberg, Ferrara & Landau
Attorneys for the Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Phone: (561) 443-0800
Fax: (561) 998-0047
Attn: Bradley S. Shraiberg
      Bernice Lee
      Eric Pendergraft

Heidi A. Feinman, Esq.
Office of the U.S. Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130
Phone: (305) 536-7285
Fax: (305) 536-7360

### 11.13    Governing Law

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 11.14    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 11.15    Section 1125(e) of the Code

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.  As of the Confirmation Date, the Debtor and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on

account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 11.16    Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11.17    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 11.18    Waiver of Bankruptcy Rule 3020(e) and 7062

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

### 11.19    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 11.20    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 11.21    Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 11.22    Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.23    No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be

allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 11.24   Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 11.25   Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 11.26   No Penalty for Prepayment

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any Claim treated under this Plan.

### 11.27   Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 11.28   Remedy of Defects

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

### 11.29.   Post-Confirmation Date Service List

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order shall be required to be sent to such entities.

*(Conclusion and signature on the following page)*

## ARTICLE XII

## <u>CONCLUSION</u>

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor, the Plan Administrator, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**DATED: September 8, 2014**

**DEBTOR-IN-POSSESSION:**

**MILE MARKER, INC.**

   /s/  Leslie Aho              
Leslie Aho, Director

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing via CM/ECF on this the 8th day of September 2014.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**Respectfully submitted,**

Bradley S. Shraiberg
Bernice C. Lee
Eric Pendergraft
SHRAIBERG, FERRARA & LANDAU, P.A.
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com
Email: ependergraft@sfl-pa.com


By:  /s/  Bradley S. Shraiberg_____
       Bradley S. Shraiberg
       Florida Bar. No. 121622
       Bernice C. Lee, Esq.
       Florida Bar No. 73535
       Eric Pendergraft, Esq.
       Florida Bar No. 91927